LUIS SERRANO, demandante y apelante, *v.* PORTO RICAN & AMERICAN INSURANCE Co., demandada y apelada.

No. 4318.—*Sometido:* Diciembre 9, 1929. *Resuelto:* Marzo 19, 1930.

716

R. *Arjona Siaca,* abogado del apelante; *Salvador Suau* y *F. Prieto,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La corte inferior declaró con lugar una excepción previa interpuesta contra la demanda presentada en una acción sobre cobro de póliza de seguro por accidente, y desestimó la acción. La teoría de la excepción y del juez de distrito fué que la demanda no aducía hechos suficientes para determinar una causa de acción, toda vez que no demostraba ninguna relación contractual entre el demandante y la demandada.

El demandante alegó que mientras conducía cierto automóvil perteneciente a doña María Isabel Landrón, arrolló y lesionó a la niña Emma Sanabria, de seis años de edad; que la dueña del automóvil notificó prontamente a la demandada del accidente, e informó detalladamente respecto al mismo por medio de una relación por escrito firmada por el demandante; que el automóvil guiado por el demandante en el momento del accidente estaba asegurado por la demandada por la suma de $5,000 contra todos los daños y perjuicios que pudiera causar el uso de dicho vehículo, por lesiones corpo-

rales o muerte a consecuencia de las mismas que se ocasionen a una sola persona dentro de la vigencia de la póliza; que era condición de dicha póliza que el seguro acreditado por ella beneficiaría a cualquier persona que anduviera en dicho automóvil, así como a cualquier persona, firma o corporación responsable de su conducción. La demanda también demostraba que la niña, Emma Sanabria obtuvo una sentencia por daños y perjuicios contra el demandante en el presente caso por la suma de $5,000, más las costas. Según fué sometida y resuelta la excepción previa por la corte inferior, ésta no se dirigió hacia este aspecto de la causa de acción.

En julio del pasado año la sentencia declarando sin lugar la demanda fué confirmada por el tribunal dividido. En noviembre esta corte ordenó, *motu proprio,* una nueva vista, y el caso fué nuevamente argumentado en diciembre.

La única cuestión que no fué levantada en la corte inferior y que se sugirió en el alegato original de la apelada es que en la demanda no se alega que la póliza estuviese en vigor en el momento de ocurrir el accidente. Se alega que el accidente tuvo lugar el 28 de noviembre de 1926. El demandante también sostiene que la póliza fué expedida para tener efecto desde enero 8, 1926, a las 12 p. m., hasta la misma hora del día 8 de enero de 1927, y, que no había sido cancelada ni terminada durante dicho término, ni antes, ni en el momento, ni después del accidente. Es una inferencia lógica de esta alegación que la póliza estaba en vigor en el momento en que ocurrió el accidente.

No tenemos a la vista la póliza en cuestión, y los hechos alegados en la demanda son admitidos por la excepción. Puede que el contrato de seguro descrito en la demanda sea poco corriente, pero no es nulo. Véanse los artículos 1222 y 1224 del Código Civil y el 51 del Código de Enjuiciamiento Civil.

En el estado actual de estos procedimientos, los casos de *Vélez* v. *Martínez,* 35 D.P.R. 552, y *Castillo* v. *Caribbean Casualty Co.,* 37 D.P.R. 405, no son aplicables.

■ La única duda que continúa en la mente de cualquiera de los miembros de la mayoría, según está ahora constituída, es respecto a una cuestión que no fué suscitada por la apelada en este tribunal ni en la corte inferior. Desde luego que este tribunal tiene el derecho a determinar de propia iniciativa la suficiencia de una demanda en cualquier momènto. Ordinariamente, sin embargo, es preferible que tal cuestión permanezca pendiente hasta que sea considerada por una corte de distrito, o, por lo menos, hasta que la desarrollen los argumentos de los abogados. En el·caso de autos asumimos que la compañía de seguros, al basar su excepción previa en el fundamento específico que ya hemos indicado, tuvo la intención de renunciar por el momento cualesquiera otras objeciones posibles contra la suficiencia de la demanda.

*Debe revocarse la sentencia apelada, declararse sin lugar la excepción previa, y devolverse el caso a la corte inferior para ulteriores procedimientos no incompatibles con esta opinión.*

OPINION DISIDENTE DEL JUEZ ASOCIADO SR. TEXIDOR CON LA QUE ESTÁ CONFORME EL JUEZ ASOCIADO. SR. ALDREY.

Ante la Corte de Distrito de San Juan, P. R., presentó Luis Serrano una demanda en la que se alegó textualmente lo que sigue:

"1.—El día 28 de noviembre de 1926, mientras el demandante, siendo aproximadamente las 5 de la tarde, se dirigía guiando un automóvil marca Essex, No. 7643, de la matrícula privada de Puerto Rico, por la calle Guadalupe de Ponce, P. R., hacia el Club Deportivo de Ponce, arrolló y produjo lesiones a la niña Emma Sanabria, de 6 años, aproximadamente, de edad.

"2.—En el momento del accidente el demandante era la ·única persona que iba en dicho automóvil y era responsable de su funcionamiento.

"3.—La persona dueña de dicho automóvil quien era doña María Isabel Landrón, de Ponce, P. R., dió cuenta del accidente, por escrito, el día 4 de diciembre de 1926 a la Porto Rican and American Insurance Co., que es una corporación establecida de acuerdo con las leyes insulares sobre corporaciones y que se dedica al negocio de se-

guros de automóviles, cuyo informe del accidente hizo la expresada señora María Isabel Landrón, mediante documento firmado por el propio demandante, en el cual se detallaban todas las circunstancias del accidente y del aseguro del automóvil.

"4.—Efectivamente, el automóvil que guiaba el Demandante en el momento de autos estaba asegurado por dicha corporación aseguradora Porto Rican and American Insurance Co., demandada en este caso, mediante cuyo aseguro la expresada corporación demandada se obligó a satisfacer, hasta una suma de $5,000, moneda americana, todo daño y perjuicio que pudiera ocasionar el uso de dicho vehículo, por lesiones corporales, o muerte a consecuencia de dichas lesiones, siempre que las mismas ocurriesen a una sola persona, dentro de la vigencia de la póliza, siendo condición de dicha póliza que el aseguro por la misma acreditado beneficiaría a cualquier persona que anduviera en dicho automóvil, así como a cualquier persona, firma o corporación responsable del funcionamiento de dicho automóvil.

"5.—La póliza creditiva del aseguro de dicho automóvil fué expedida para tener efecto desde el día 8 de enero de 1926 a las 12:00 P. M. hasta igual hora del día 8 de enero de 1927, y nunca fué, durante dicho período, ni antes, ni en el momento del accidente, ni después del mismo, cancelada o terminada, habiendo la corporación demandada asumido la responsabilidad ya expresada de dicho aseguro mediante el pago de una prima o consideración que cobró para sí y retuvo siempre dicha corporación demandada.

"6.—El día 12 de enero de 1927, la lesionada Emma Sanabria compareció a la Corte de Distrito de Ponce, P. R., por conducto de su padre legítimo, Eustaquio Sanabria, y formuló una Demanda contra el ahora Demandante, que inició el caso civil núm. 1375 de dicha Corte, en la cual reclamaba, como daños y perjuicios sufridos por virtud del accidente referido en dicha Demanda, que es la misma relatada al hecho 1º de ésta, la suma de $9,000.00, moneda americana.

"7.—La Corte de Distrito de Ponce, P. R., con fecha 4 de marzo de 1927, dictó sentencia en dicho caso y condenó al entonces demandado y ahora demandante Luis Serrano, a satisfacer a la entonces demandante, Emma Sanabria, la suma de $5,000.00, moneda americana, en virtud del antes relatado accidente, más las costas en la acción.

"8.—El demandante está cubierto por la póliza de seguros extendida y suscrita por la demandada Porto Rican and American Insurance Co., tal como queda antes detalladamente ameritado."

Y pidió se condenara a la demandada a asumir la responsabilidad del pago de los $5,000, más las costas en ambos pleitos.

A esta demanda se opuso la excepción previa de falta de hechos para constituir causa de acción, la que fué declarada con lugar, y dictada sentencia de acuerdo con tal declaración. Contra esta sentencia se ha interpuesto el presente recurso.

Dos señalamientos de error se hacen por el demandante apelante. Pueden, prácticamente, reducirse a uno. Son así:

"Primer Error.—Erró la Corte inferior al dictar, digo, al declarar con lugar la Excepción Previa a la demanda, sobre falta de causa de acción.

"Segundo Error.—Erró la Corte inferior al dictar sentencia en contra del demandante y apelante en este caso."

Se sostiene por la parte apelante que el error de la corte consistió en considerar que no habiendo sido el demandante parte en el contrato de seguro entre la compañía demandada y la dueña del automóvil, no podía ejercitar acción alguna sobre tal contrato.

Acerca de este particular se argumenta por la apelante, tomando por base la diferencia entre la doctrina de la ley común y la de los diferentes Estados de la Unión, que han repudiado aquélla. Por la ley común—se dice—se establecía que los que no eran parte en un contrato, no podían demandar y ejercitar acción fundándose en tal contrato; por la jurisprudencia y la legislación codificada se ha sostenido lo contrario. Y se cita el caso *Austin* v. *Seligman,* 18 Fed. 519, en donde, con relación a aquella regla se dice:

"En ninguna de estas decisiones ni en parte alguna de este país, se ha reconocido la regla inglesa."

Cítanse luego numerosas decisiones, sobre todo del Estado de California.

Planteemos la situación en este caso.

No hay duda alguna de que gran parte de los Estados ha rechazado la regla inglesa, bien por medio de la jurispru--

dencia, bien por medio de legislación codificada. Y esos Estados, en la decisión de sus casos, se han atenido, ya a su jurisprudencia, ya a sus códigos.

No encontramos razón alguna para que en esta jurisdicción no sigamos el mismo procedimiento. Y si tenemos un estatuto claro y definido, es inútil que busquemos en la jurisprudencia o en la ley de otro Estado, la solución que en nuestra ley o nuestra jurisprudencia tenemos hecha.

En nuestro Código Civil existe un artículo, el 1224, cuyo segundo párrafo es así:

"Si el contrato contuviere alguna estipulación en favor de un tercero, éste podrá exigir su cumplimiento siempre que hubiere hecho saber su aceptación al obligado antes de que haya sido aquélla revocada."

Y en lo que a este precepto legal se refiere es conveniente, o si se quiere, necesario, ver cómo lo ha interpretado nuestra jurisprudencia.

En el caso *Gelabert et al.* v. *Sánchez, demandado, y Gelabert et al., interventores,* 26 D.P.R. 654, se citó el artículo 1224 del Código Civil, y la nota de Manresa con relación al 1257 del Código Civil Español. Esta última dice:

"Hasta el momento de la aceptación puede variarse lo estipulado y aún desistir de ello por el mutuo disenso de los verdaderos contratantes; desde que aquélla se verifica, ya una tercera persona se mezcla en la relación y adquiere un derecho que sin su consentimiento no puede modificarse ni extinguirse, adquiriendo también el de defender, aun contra los otros interesados, la validez del contrato. 8. Manresa, Código Civil Español, 616."

En el caso *Sucesión Orcasitas* v. *A. M. Somoza y Compañía,* 31 D.P.R. 625, se ha dicho:

"No pueden los hechos ocurridos considerarse como comprendidos en el artículo 1224 del Código Civil referente a que cuando un contrato contuviere estipulación a favor de un tercero, éste podrá exigir su cumplimiento, siempre que hubiese hecho saber su aceptación al obligado antes de que haya sido aquélla revocada, porque entre Josefa Orcasitas y Sucesores de Orcasitas y Compañía no existió un

contrato ni existió estipulación a favor de José Ramón Orcasitas y porque en todo caso no se ha probado que éste hubiese hecho saber aceptación alguna a dicha mercantil, por lo que Josefa Orcasitas pudo dejar sin efecto, como lo hizo, la orden que había dado a dicha mercantil, según se ha resuelto en el caso de Gelabert v. Sánchez, 26 D.P.R. 656.''

El caso *José C. Castillo* v. *Caribbean Casualty Co.*, 37 D.P.R. 405, tiene analogía con el que resolvemos. En la opinión en ese caso se lee lo que sigue:

"El caso es enteramente simple. Lo complican las partes. No cabe dictar sentencia en contra de la demandada porque no existe relación contractual alguna entre ella y el demandante. Es cierto que la materia del seguro fueron los accidentes que pudieron causarse con el automóvil de que se trata, pero el seguro lo hizo el dueño con la compañía para que ésta respondiera por él. Aquí no se demandó primitivamente al dueño ni se dictó sentencia contra él de que deba responder la compañía aseguradora. No importa que Martínez fuera el chauffeur de Sosa, pues se le demandó personalmente y únicamente contra él se dictó sentencia. Sosa no tuvo oportunidad de defenderse ni la compañía de defenderlo para defenderse a sí misma. Castillo escogió como único responsable a Martínez y Martínez no estaba protegido por la póliza de la Caribbean. La póliza protegía a Sosa de las responsabilidades en que éste pudiera incurrir por accidentes causados por su automóvil. Y aquí, repetimos, no se ha demostrado responsabilidad alguna por parte de Sosa. Es incomprensible en verdad que la demanda se entablara sólo contra Martínez si es que Martínez era el chauffeur de Sosa y actuaba dentro del radio de su empleo. Sólo se explica que de tal modo se siguiera el primer pleito, teniendo en mente el segundo, no yendo el dueño en el auto cuando ocurrió el accidente, intentándose así eludir que se aplicara la ley y la repetida jurisprudencia de esta Corte Suprema sobre el particular, liberándose de responsabilidad al dueño y por consiguiente a la compañía aseguradora. Se quiso llegar a ésta saltando por encima del dueño, basándose en una sentencia obtenida contra su chauffeur, pero tal procedimiento no encuentra apoyo en la ley, ni en la jurisprudencia. Los contratos, dice el artículo 1224 del Código Civil sólo producen efecto entre las partes que los otorgan y sus herederos.

"Sólo cuando el contrato contuviere alguna estipulación en favor de un tercero, es que éste puede exigir su cumplimiento, y aún entonces, según el mismo precepto legal citado, siempre que el ter-

cero hubiere hecho saber su aceptación al obligado antes de que haya sido aquélla revocada. En este caso no había estipulación alguna expresa a favor del demandante, ni implícita a menos que se hubiera demandado a Sosa. Martínez sin Sosa, o sea el chauffeur independientemente del dueño, no está relacionado legalmente con la compañía. Tampoco el auto sin el dueño.''

La aceptación por el tercero a cuyo favor se crea un derecho es indispensable. La razón de ello es elemental. Indispensables para que surja el consentimiento son la oferta y la aceptación; faltando cualquiera de esos elementos el consentimiento contractual no aparece en la vida del derecho. Y, como secuela, no nace contrato alguno; y no tiene tampoco existencia la acción para reclamar el cumplimiento de contrato.

En códigos que tienen similaridad con el nuestro, encontramos el principio que comentamos. En el Código Civil de Louisiana, vemos los siguientes artículos:

''1890.—Una persona puede también, en su propio nombre, constituir algún beneficio para una tercera persona como condición o consideración de un contrato conmutativo o de una donación onerosa; y si tal tercero consiente en aprovecharse por sí del beneficio estipulado a su favor, el contrato no puede ser revocado.

''1902.—Pero un contrato en que se estipula algo para beneficio de un tercero que ha expresado su intención de aceptarlo no puede ser revocado en lo que se refiere al provecho estipulado a favor de tal tercero, sin su consentimiento.''

En la jurisprudencia española, hallamos con anterioridad al Código Civil, y en sentencias del Tribunal Supremo la declaración de que el que acepta una obligación contraída por otro a favor de un tercero, queda obligado a su cumplimiento, siempre que aparezca justificada por hechos posteriores la aceptación por parte de aquél a cuyo favor se hubiese constituído.

Comentando el artículo 1257 del Código Civil Español, igual en su texto al artículo 1224 de nuestro Código Civil, dice Scaévola:

''(c) Aceptación por el tercero de la estipulación consignada a

su favor.—Es elemento capital, a partir del cual nace la relación jurídica. De nada sirve que las partes, los otorgantes de un contrato, hayan formulado algún derecho, o alguna obligación, en pro o en contra, respectivamente, de una tercera persona; ésta será un extraño, ajeno por completo a la convención, a quien no alcanzan, en lo favorable ni en lo adverso, las consecuencias de ella. Por algo el Código emplea la conjunción condicional 'siempre que' equivalente a 'con tal que'; es decir, si el tercero acepta; en otro caso, no.''

Debe notarse que la frase del código es más precisa que lo que cree el comentarista. No basta con que el tercero acepte, sino que es preciso que haga saber al obligado su aceptación.

En la demanda de que se trata no se alega ni que Luis Serrano aceptara el beneficio de la póliza, ni que hiciera saber a la demandada tal aceptación. Se alega que el demandante está cubierto por la póliza del seguro; pero esto no es otra cosa que una conclusión legal, que, en su caso, y en vista de los hechos y la prueba, tendría que hacerla la corte. Y no estamos obligados a aceptar tal conclusión como un hecho.

La cuestión de existencia o inexistencia de nexo jurídico entre demandante y demandado fué planteada por la apelada en este caso. Aun si no lo hubiera sido, el carácter de general que tiene la excepción, nos justificaría al considerar tal aspecto, en apelación.

En cuanto al fondo, la excepción previa está bien resuelta.

Por las razones expresadas debe confirmarse la sentencia apelada.

Estoy autorizado para decir que el Juez Asociado Sr. Aldrey está conforme con esta opinión.