Giménez Muñoz, Juez Ponente
*1286 TEXTO COMPLETO DE LA SENTENCIA
Este caso nos permite analizar la figura del contrato para beneficio de tercero y de la necesidad de comparecer el cónyuge del comprador en la escritura de venta de un inmueble.
El 14 de septiembre de 1973, los esposos Héctor José Toledo y Alice Dora Toledo, mediante contrato privado de compraventa, vendieron una finca de alrededor de una cuerda de terreno, localizada en el Bo. Hato Arriba del término municipal de Arecibo a los demandados-apelantes, Francisco Rivera Fuentes e Isabel Arroyo Rodríguez. Pasados varios años, el 14 de abril de 1977, los esposos Toledo-Toledo otorgaron junto al apelante, Francisco Rivera Fuentes, la escritura Núm. 45 de Ratificación de Compraventa de la finca ya mencionada. En esta escritura compareció tan sólo el Sr. Francisco Rivera Fuentes como casado con Doña Isabel Arroyo Rodríguez.
En la escritura mencionada de Ratificación de Compraventa, en la primera de sus cláusulas expositivas y luego dé describir la finca, se expresó:.

"Contiene una casita de concreto, techada en zinc. Esta casita es propiedad de Margaro Rivera Fuentes y su esposa Otilia Nistal".

La cláusula expositiva quinta también hace referencia a la misma casita y al solar donde ubica al expresar:

"Hacen constar los esposos Toledo-Toledo que la casita que está enclavada en dicha parcela de terreno [es] propiedad del Sr. Margaro Rivera Fuentes y su esposa Doña Otilia Nistal, a quienes el comprador se ha obligado a vender el solar donde ubica la casita por el valor de $1.00." 

Ante la negativa de los demandados-apelantes de cumplir con el acuerdo celebrado, es decir, vender por un dólar el solar, los esposos Margaro Rivera y Otilia Nistal incoaron demanda el 28 de marzo de 1995 en el Tribunal de Instancia, Sub-sección de Distrito. Este Tribunal declaró con lugar la demanda y ordenó a los demandados "realizar las gestiones necesarias a los fines de que se logre el traspaso y segregación del predio". Señaló, además, que por haber los demandantes vivido la propiedad por más de 34 años-, de modo ininterrumpido, aplicaba la figura de prescripción adquisitiva.
No estando conforme con la sentencia, los demandados, apelados radicaron Escrito de Apelación el 5 de junio de 1995, señalando seis errores que compendiamos en dos: A- el conferir eficacia y validez al contrato de compraventa y la cláusula de venta y B- negarse a declarar nulo el contrato o escritura en vista de la no comparecencia de uno de los cónyuges.
II
A- De conformidad con lo dispuesto en el Artículo 1209 del Código Civil, 31 L.P.R.A. 3374, respecto a las disposiciones de un contrato para beneficio de terceros, es claro que éstos pueden exigir su cumplimiento. A.L. Arzuaga, Inc. v. La Hood Const. Inc., 90 D.P.R. 104 (1964).
Dispone el Artículo 1209, que:

"Si el contrato contuviere alguna estipulación en favor de un tercero, éste podrá exigir su cumplimiento, siempre que hubiese hecho saber su aceptación al obligado antes de que haya sido 
*1287
aquélla revocada.

En nuestro ordenamiento jurídico, junto a otras jurisdicciones del derecho civil, el "sancionar las estipulaciones a favor de tercero" es la tendencia. A.L. Arzuaga, Inc. v. La Hood Const., Inc., supra.
La figura del tercero beneficiario no es ajena a los contratos que en el quehacer jurídico y en los negocios encontramos a diario. Ejemplo de ello son los contratos de seguro y de fianza. De ordinario, los contratos producen efecto entre las partes que lo otorgan y sus herederos, mas cuando se consigna alguna estipulación a favor de un tercero éste puede exigir su cumplimiento siempre que haga saber su aceptación. Gelabert v. Sánchez, 26 D.P.R. 654 (1918). La aceptación puede ser expresa o tácita e incluso una reclamación puede considerarse como la aceptación requerida.
En el caso de autos, los contratantes acordaron de forma diáfana y precisa cierta obligación que es válida en toda su extensión. Existe un vínculo contractual legítimo del cual los apelantes no pueden distanciarse alegando estar en desacuerdo con el pacto. . El lenguaje utilizado en la escritura no deja lugar a dudas de que "el comprador se ha obligado a vender el solar donde ubica la casita" de los apelados. Tampoco debe existir duda de que los apelantes, cuando menos desde el 1965, fecha en que la Sra. Otilia Nistal compró la casita, han vivido la estmctura que radica en el predio que motiva esta apelación.
El caso de autos, pues, enmarca dentro del contrato para beneficio de un tercero, contrato éste que fue aceptado por los apelados cuando instaron la reclamación objeto de este caso y cuando han continuado ocupando por casi toda una vida la estructura y, por ende, el solar en cuestión.
B- El segundo señalamiento de los apelantes gira en torno a la no comparecencia de la co-demandada y apelada Isabel Arroyo en el otorgamiento de la escritura de ratificación de compraventa.
Al respecto, dispone el Artículo 91 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 284 que: " [ajmbos cónyuges serán los administradores de los bienes de la sociedad conyugal, salvo pacto en contrario, en cuyo caso uno de los cónyuges otorgará mandato para que el otro actúe como administrador de la sociedad".
El Artículo 91, pues, limita la facultad de ambos cónyuges de comprar con los bienes gananciales. Solamente serán válidas estas compras "cuando se refieran a cosas destinadas al uso de la familia o personales de acuerdo con la posición social y económica de ésta". La adquisición de bienes para la sociedad de gananciales necesita del consentimiento de ambos cónyuges y se prohibe la enajenación o que se graven los bienes inmuebles de la sociedad conyugal bajo pena de nulidad, salvo que se obtenga el consentimiento escrito de ambos cónyuges.
Este Artículo 91, junto a los Artículos 93, 1308 y 1313, 31 L.P.R.A. secs. 286w 3661 y 3672, respectivamente, según enmendadas por la Ley Núm. 51, aprobada el 21 de mayo de 1976, revelan "el advenimiento de la mujer a una plena e igual participación con el hombre en el gobierno de la sociedad de gananciales y ala representación legal de su interés". 
En Silva Ramos v. Registrador, 107 D. P. R. 240 (1978) el Tribunal Supremo se enfrentó a una actuación del Registrador de la Propiedad quien se negó a practicar anotación alguna en el Registro sobre una escritura de venta por faltar el consentimiento por escrito de la esposa. El Tribunal Supremo estudió con detenimiento los referidos artículos del Código Civil ante el planteamiento de que "la compra y venta de bienes inmuebles son actos de disposición para los cuales se requiere el consentimiento por escrito de ambos cónyuges" y atemperó el rigor de esta expresión señalando que el propósito que persiguen estas normas es el de proteger a un cónyuge del mal juicio y error de discreción del otro:
"Mal se llevaría a cabo la filosofía moderna de igualdad si, so color de llamarse acto de administración, se dejara a cualquiera de los cónyuges adquirir bienes inmuebles para la sociedad a riesgo de dilapidar el capital ganancial. Aguilú v. Sociedad de Gananciales, 106 D.P.R. 652, 656 (1977)"; Silva Ramos, supra, alapág. 246.
*1288 En Silva Ramos, supra, caso que trataba de la cesión de título formalizado mediante venta en escritura "por el convenido y ajustado precio de un dólar", se ordenó la inscripción en el Registro de la Propiedad por no existir carga, ni obligación onerosa para la sociedad, a pesar de la no comparecencia de la esposa.
En el caso que nos ocupa, la comparecencia de la esposa en la escritura de ratificación de compraventa mencionada no es un requisito absoluto. El defecto señalado, la no comparecencia de uno de los cónyuges, no produce en todos los casos la nulidad del negocio jurídico. Silva Ramos, a la pág. 246; Sojo v. Registrador, 35 D.P.R. 855 (1926); Lanausse v. Silva, etc., 84 D.P.R. 546 (1962).
En adición, es preciso señalar que en este caso la co-demandada Isabel Arroyo, cónyuge que no compareció en la escritura, participó en el contrato de compraventa efectuado en 1973, junto a su esposo Francisco Rivera y en, dicho negocio dio su consentimiento a la compra de la finca bajo idénticas condiciones a las contenidas en la escritura de ratificación otorgada en 1977. La no comparecencia a la que alude se refiere tan sólo a la escritura de ratificación de esa compraventa otorgada años después de efectuado el contrato de venta. 
En atención a estos señalamientos debe subsistir la compraventa válidamente efectuada.
Por la razones expresadas, confirmamos la sentencia apelada.
Así lo acordó el Tribunal y lo certifica la Secretaria General.
María de la C. González Cruz
Secretaria General
ESCOLIOS 95 DTA 326
1. Según declaración jurada del 29 de junio de 1965, la Sra. Otilia Nistal (co-demandante) compró a la Sra. Tomasa Rivera una casa de madera de 15 x 12 por el precio de $100.00. Del testimonio suyo surge que ella "ha vivido toda su vida en la finca".
2. El apelante, según la exposición estipulada de la prueba, leyó y firmó el documento que hoy objeta, aunque dice que no estuvo de acuerdo con el mismo.
3. Ahora, el demandado Francisco Rivera.
4. Disponen dichos artículos:

"1. Artículo 93, 31 L.P.R.A., see. 286

Salvo lo dispuesto en la see. ¿84 de este título, cualquiera de los cónyuges podrá representar legalmente a la sociedad conyugal. Cualquier acto de administración unilateral de uno de los cónyuges obligará a la sociedad legal de gananciales y se presumirá válido a todos los efectos legales."

2. "Artículo 1308 del Código Civil

Serán de cargo de la sociedad de gananciales: 1) Todas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges 2) Los atrasos o créditos devengados durante el matrimonio, de las obligaciones a que estuvieron afectos así los bienes propios de los cónyuges como los gananciales. 3) Las reparaciones menores o de mera conservación hechas durante el matrimonio en los bienes peculiares de cualquiera de los cónyuges. Las reparaciones mayores no serán de cargo de la sociedad. 4) Las reparaciones mayores o menores de los bienes gananciales. 5) El sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges. 6) Los préstamos personales en que incurra cualquiera de los cónyuges."

*1289 3. "Artículo 1313 del Código Civil

No obstante lo dispuesto en la see. 284 de este título, ninguno de los dos podrá donar, enajenar, ni obligar a título oneroso, los bienes muebles e inmuebles de la sociedad de gananciales, sin el consentimiento escrito del otro cónyuge, excepto las cosas destinadas al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges. Todo acto de disposición o administración que sobre dichos bienes haga cualquiera de los cónyuges en contravención a esta sección, y los demás dispuestos en este título, no perjudicará al otro cónyuge ni a sus herederos. El cónyuge que se dedicare al comercio, industria, o profesión podrá adquirir o disponer de los bienes muebles dedicados a esos fines, por justa causa, sin el consentimiento del otro cónyuge. No obstante, será responsable por los daños y perjuicios que pudiere ocasionar por dichos actos a la sociedad legal de gananciales. Esta acción se ejercitará exclusivamente en el momento de la disolución de la sociedad legal de gananciales."

5. Compraventa cuyo documento no forma parte del legajo, pero surge de la exposición estipulada que los apelantes Francisco Rivera e Isabel Arroyo, compraron la finca donde ubica el solar y casita de los apelados.
6. Exposición estipulada de la prueba oral, testimonio de José Héctor Toledo, pág. 18, línea 8. En la declaración de Otilia Nistal Alvarez aparece, además, que "...Don Francisco Rivera e Isabel Arroyo le compraron la finca a Don José A. Toledo y su esposa, pero que en el contrato de compraventa se dispuso una cláusula, que estipulaba que los compradores tenían que venderle a ella y a su esposo el terreno donde ubica su propiedad por la suma de $1.00". Exposición estipulada de la prueba oral, Apéndice Conjunto, pág. 17.
7. Resulta curioso que los apelantes señalen que la "mención", como llaman a la cláusula mediante la cual se obligaron a vender el solar a favor de los demandantes apelados, no es válida, por carecer del "consentimiento, firma o comparecencia de la apelante Isabel Arroyo Rodríguez". De ser ese el caso, tendríamos forzadamente que concluir que la compraventa de la finca no fue válida, toda vez que el negocio jurídico en que se fundamenta, forma parte del documento cuya validez atacan por razón de la no comparecencia.